You talk a little louder, the acoustics aren't that great, and it's hard to hear if you talk softly. Yes, Your Honor. Is that better? Great. This is Teresa Salazar. She's my associate with me on brief. Your Honors, the cause to the petitioner of an erroneous credibility determination is too great for us to get it wrong and for us to rely on this decision, the Board's decision. The Board's decision stated that the petitioner lacked credibility because he was inconsistent with respect to the number of times that he was arrested. The decision doesn't seem to question whether or not he was arrested, just the number of times that he was arrested. Well, I don't know if that's quite right. The I.J. decided he didn't believe him. Who knows if he's arrested? Who knows anything about him once you don't believe him? The evidence is just his story. Except that, Your Honor, there was corroborating testimony from the petitioner's uncle that he was there on two of the occasions after he was arrested, and he was there to get him out and also to take him to seek medical treatment. So it would have been reasonable for the I.J. In fact, the I.J. did in fact state that there was evidence of past persecution, but he stated that he didn't really know what the basis of the arrest were. The Board's decision then goes on to state that the inconsistency was with respect to the original 589, which was in 1992. That application was prepared one month from the time that he entered the United States. He gave testimony ten years later. The only other place where he gave testimony that was allegedly inconsistent was at an asylum interview, where the asylum interviewer found the petitioner to be credible and consistent. Counsel, the real issue for us, we don't get to decide his credibility really. All we get to decide is whether there's substantial evidence on the record as a whole, so that the I.J.'s decision on his credibility isn't portable. I think there's some question, Your Honor, as to whether the Board relied on solely its own determination or whether it did an over-review and simply adopted and affirmed the I.J.'s decision. In fact, if you look at the decision, it starts out by stating that the number of times that he was arrested was inconsistent. But by the end of the decision, it says, because the record contains inconsistent evidence that undermines his credibility, we affirm the I.J.'s decision. I would submit to you that because the record contains inconsistent evidence refers to the inconsistent evidence that the Board referred to itself, i.e., the number of times that the petitioner was arrested. That in and of itself is not a sufficient basis to sustain an adverse credibility finding under this Court's jurisprudence, because what happened was the application... The application doesn't make an affirmative statement that the petitioner was never arrested. The application just doesn't state anything about any arrest. He then goes into the interview at the asylum office, and the asylum interviewer herself admitted that she did not remember stating if she had asked him how many times he was I'm impressed with this letter from the State Department, April 18, 1995, that goes through his application in detail and says there are a lot of reasons not to believe him. I don't know if they're right. I don't know anything about... I've never been to the Punjab or any other part of India. Why shouldn't we just treat that as substantial evidence on the record as a whole, and it's their call? Because it's the I.J.'s responsibility to do an individualized analysis based on the testimony that he has in front of him, and he cannot rely simply on a statement by... I mean, this Court has in the past said that just as we can't rely on your own speculation, you can't rely on the speculation of somebody at the Department of State who happened to write a report and never spoke to the petitioner, and never addressed any of the testimony that he gave in terms of the harm that he suffered. I mean, the decision... The fact that he left off, as I was saying, the omission, it's an omission, not a permanent statement. I would remind, in Sundar Alinkum v. Gonzalez, the petitioner left off at detention and arrest. The I.J. found this to be a glaring inconsistency, and this Court straightened him out and said that the mere fact that testimony is added doesn't make that testimony incredible. I mean, the heart of the petitioner's claim was that he was a member of the AISSF, and that he feared persecution if he returned. That's what he put on his original application. He didn't say anything about arrest, although he did say that he was harassed and that he was considered a troubleshooter in his area, and that the police knew about him. We then have the testimony of his uncle, who was there to get him out of jail a couple of times, or to take him to seek medical treatment. So that cannot be an inconsistency simply because he added more detail or information to the original application. Except that he left off the fact that he was arrested. Pardon me, Your Honor? Except that he left off the fact. He forgot to mention that he was arrested. Well, but again, let's take a look. I mean, this is an application that he prepared, or that was prepared for him, one month from the time that he got into this country. And his memory shouldn't have improved with time, right? Well, I mean, so then how would we explain, then, the asylum interviewer's assessment that he was, in fact, credible? And she even said that he's perfectly credible, consistent application and his oral testimony, with the exception of the fact that he left off the arrest. She stated that. She didn't think that that was a sufficient clarity and consistency that made him incredible. What she said was that she believed that he said KLF, the Kalestani Liberation Force, and she assumed that's where I needed to go. She said, as an asylum officer, I believe that's where I needed to go. So she pretty much shut down everything and just started focusing on those questions and asked everything about that. Her decision doesn't say anything about the AISSF, and that's the only thing that's mentioned in this application. The opening part of the application is that he's a member of the AISSF and that he fears to be harmed if he goes back. The only reference to the KLF in the application is with respect to his uncle. So, I mean, I... The problem is, one way of looking at it is he forgot that he'd been arrested. Another way of looking at it is he remembered the story he was supposed to tell to make it better at his hearing and was just telling whatever story was good. We really can't know which is the truth. Actually, nobody can know because nobody goes over to India and does an investigation in these things. All we can know is the substantial evidence, and it seems to me you have two kinds. Number one, his inconsistency is on something that is really important and striking. Most people would remember getting arrested, especially in a place where they roll rollers over your legs and stuff in jail. The other thing is, the inconsistency is what the State Department says circumstances are like at the time. Kind of like if somebody looked me straight in the eye, seemed like a perfectly credible individual and said, they no longer sell hamburgers in America, there's no place in America you can get hamburgers and french fries. No matter how honest he looked, I would know he was lying. The asylum interviewer said that 50%, more than 50% of her docket consisted of Indian asylum claims. That was primarily what she was involved in adjudicating. She found that the petitioner's testimony was consistent with country conditions as well. She presumably would be also an expert in that area. She found him to be credible. She found his testimony to be consistent with the conditions there. We're concerned more with the IJ at this point, because even though the asylum officer said that she thought that he was credible, the asylum officer recommended turning him down. Then went to the IJ. The IJ has an independent responsibility to do this, and the IJ and the BIA have taken a look at this. One of the things they pointed to is that on his initial application, he was asked why he was seeking asylum, and he said he was a demonstrator, never mentioned that he was arrested. Question 22 was specifically asked, have you or any member of your family ever been arrested, detained, or interrogated? The answer was yes, my father and uncle. He did not, even though he was specifically asked, have you ever been arrested? And he checked the box yes. He did not say, I have been arrested. Later on, his story improved substantially. Except that he didn't prepare the application. Someone prepared it for him a month from the time that he entered this country. Are we supposed to believe this application or not? What are we supposed to do with it? You believe his testimony at the hearing, which was always the same. From the time that he went to a lawyer and got someone to prepare an application properly, it was always three arrests that he had. Why are we supposed to believe the testimony before the IJ when he has previously signed? Had somebody helped him prepare and has signed an application to the United States, saying these are the grounds on which I wish to be admitted, and he hasn't answered the question truthfully? Well, he... It isn't at number 22. No, it is, except that he didn't understand what the application said, and he told the IJ that he didn't prepare it, and that it must have been omitted, the same exact reasons that Sunthana Linkan, that petitioner, said, my attorney must have left it off. I don't know what happened. Where would the preparer get the information except from him? Well, he has no control over what's put into the application, and if it's read back... Talks to the preparer. He answered other questions. I will be arrested, tortured, persecuted, and killed if he returned to India. That's why he said he feared going back to India and did not wish to be sent back and wished for asylum. I will be arrested. Right. And that is a basis for future persecution. It doesn't necessarily... But he answered that question, and somebody clearly got that one correct. We got lots of other information on this thing correct, but on a very, very critical question, he didn't answer it correctly. Later on, his story improves, and our law says if you've got inconsistencies and your story is improving over time, those are full grounds for deeming you not to be credible. Our law also says that if you provide more detail subsequently, then we're not going to hold it against you if you left off something in the initial application. And the only other evidence that you have of the arrest is provided by one member of his family. Is that right? That's correct, Your Honor, someone who is found credible by the IJ. I'm over time. Sorry, Your Honor. Thank you, Counsel. Good morning, Your Honors. My name is Carolyn Delaney. I represent Alberto Gonzalez in this matter. Frankly, the questioning of the petitioner in this matter has already answered or set forth most of my points. The fact is that the IJ went through an extremely exhaustive process. We prepare for these things, but I have a question for you, too. It seemed kind of funny that the immigration officer would remember something from an interview, what was it, 10 years ago, that she didn't have in her notes. Is that this case? Am I mixing it up with another case? That's this case. She testified that she remembered Mr. Gruhl specifically because he made an impression on her. I remember one time when a policeman testified in a case I was trying, that he remembered some skid marks that he had not put in his notes in the most routine possible car accident and did not bode well for his credibility. On the other hand, you had the officer before you to assess his credibility and it may have been. I had the policeman right there on the witness stand and I knew he was lying. Right. And that's the determination that you were to make. In this case, the IJ was. . . I didn't know he was lying because of his demeanor. His demeanor was just wonderful. It's just that in routine matters, remember a skid mark from years ago when he's had hundreds of accidents like it? Not likely. That certainly is possible. But in this case, the IJ who was sitting in the position that you were sitting in, watching the policeman, watched the asylum officer, heard what she said, looked at her notes and believed her to be credible. But it's not in the notes, right? Which part? About the arrest? The. . . There were things that she testified to that were not in her notes. The issue before this Court now, however, is whether or not the fact that he omitted the information from his various asylum applications about his prior arrest served to justify and explain the IJ's perfectly reasonable conclusion that he wasn't credible. The fact is that as counsel has stated, within a month of entering this country saying essentially he's afraid for his life, he's going to be killed if he goes back to India, he neglects to mention anything about ever being arrested. I would point, Your Honors, to the exhibits in the record that I know you've read, but Exhibit A is the first asylum application which neglects any mention of a prior arrest, says simply that he's fearful of going back to his country because he believes that he will be arrested. Certainly, it couldn't be any more strong evidence that his belief was warranted if he had already been arrested. There's just no way to conceive that he could have forgotten that. He says that these were mistakes made by an attorney. These were mistakes made by typists. They're mistakes made by everyone but him. He makes a similar error, apparently, as reflected in Exhibit I, which is his application for adjustment of status when he gets married, although that marriage is later ended. He answers the question specifically that he has never been arrested. So it does seem that the petitioner in this matter answers questions according to how he thinks it will go well for him. He doesn't realize when he fills out the first application that by acknowledging membership in the KLF, that will serve to deny him his asylum, and he is not eligible for asylum if he's a member of a terrorist organization. When he realizes that, he changes his story to say, oh, no, I wasn't a member of the KLF, a distant relative was. When he testifies, he says, I'm not even sure if that distant relative was, although it's patently clear from his earlier applications he knows exactly who he was and exactly what he was doing. In short, all of the evidence that was presented to the IJ, he went through, as I've noted in my brief, approximately 50 pages of written transcript, parsing through all of these important matters that went right to the heart of the petitioner's claim and came justifiably to the conclusion that the petitioner is not to be believed. Are the strongest points on your side disregarding the immigration officer's testimony that the first time he told about what his problems were, he said he wasn't arrested, the second time he said that he was, the first time he said he was in the KLF, and the second time he said he wasn't? Those are some of the points. The additional point was the application for adjustment of status when he denies ever having been arrested, either inside the United States or outside. So he denies it, he says he was arrested, then he denies it again. Those would be the strongest points for the credibility determination. The first time he said he wasn't arrested, second time he said he wasn't arrested, third time he was. Putting aside the asylum officer, yes. Correct. Unless the Court has any further questions, I'm prepared to submit it. Thank you. Do we need a recess now? We'll take a brief recess.
judges: Kleinfeld, Bybee, Whaley